EXHIBIT "A"

## NATIONAL REGISTERED AGENTS OF HI,INC.

### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: Emma Paxton, Paralegal
Luxottica Retail
4000 Luxottica Pl
Mason, OH 45040-8114

SOP Transmittal #   **538429669**

800-592-9023 - Telephone

Entity Served:  LUXOTTICA OF AMERICA INC.  (Domestic State: OHIO)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents of HI,Inc. or its Affiliate in the State of HAWAII on this 19 day of October, 2020. The following is a summary of the document(s) received:

1. **Title of Action:**  HOLLY FINLEY, PLTF. vs. LUXOTTICA OF AMERICA INC., ETC., DFT.

2. **Document(s) Served:**   Other: -

3. **Court of Jurisdiction/Case Number:** None Specified
   Case # 1CCV200001380

4. **Amount Claimed, if any:**  N/A

5. **Method of Service:**

   _X_ Personally served by:      _X_ Process Server      ___ Law Enforcement      ___ Deputy Sheriff      ___ U. S Marshall

   ___ Delivered Via:          ___ Certified Mail      ___ Regular Mail      ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:**   10/19/2020 01:13:00 PM CST

7. **Appearance/Answer Date:**  None Specified

8. **Received From:**    None Specified               9. **Carrier Airbill #** 1ZY041160197013505

                                                       10. **Call Made to:** Not required

11. **Special Comments:**

SOP Papers with Transmittal, via  UPS Next Day Air

Image SOP

Email Notification,  Emma Paxton  epaxton@luxotticaretail.com

Email Notification,  Julie Coffman  jcoffman@luxotticaretail.com

**NATIONAL REGISTERED AGENTS OF HI,INC.**                    **CopiesTo:**

Transmitted by   Amy McLaren

The information contained in this Summary Transmittal Form is provided by National Registered Agents of HI,Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL



**PLEASE NOTE:**

**SERVICE TAKEN FOR:**

# LUXOTTICA OF AMERICA INC.

Wolters Kluwer

Of Counsel:
Law Office of Roman F. Amaguin
Attorney at Law

ROMAN F. AMAGUIN          6610
345 Queen Street
Suite 504
Honolulu, Hawaii 96813
Telephone: (808) 545-4151
roman@amaguinlaw.com

Attorney for Plaintiff

**Electronically Filed
FIRST CIRCUIT
1CCV-20-0001380
08-OCT-2020
10:09 AM**

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAIʻI

| | |
|---|---|
| HOLLY FINLEY, | ) CIVIL NO. _____ |
| | ) (Other Non Vehicle Tort) |
| Plaintiff, | ) |
| | ) **COMPLAINT; JURY DEMAND;** |
| | ) **SUMMONS** |
| vs. | ) |
| | ) |
| | ) |
| | ) |
| LUXOTTICA OF AMERICA INC. dba | ) |
| LENSCRAFTERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

### COMPLAINT

Plaintiff HOLLY FINLEY (hereinafter "Plaintiff"), by and through her

attorney, complains against the above-named Defendant LUXOTTICA OF

AMERICA INC. dba LENSCRAFTERS ("Defendant" or the "Employer"), and

alleges and avers as follows:

### PARTIES

1.    During the relevant time frame Plaintiff was a citizen of Honolulu,

Hawai'i.

2.      Defendant is a company organized under the laws of the State of Hawai'i, with its principal place of business located in Honolulu, Hawai'i.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the matter pursuant to HRS § 603-21.5(3) and § 634-35.

4.      Pursuant to HRS § 603-36(5) venue is proper in this circuit.

5.      The Defendant employer has operations and is based out of Honolulu, Hawaii.

6.      The acts about which Plaintiff complains, including but not limited to approval of decisions affecting her terms and conditions of employment and termination, occurred in the City and County of Honolulu.

7.      The Court has jurisdiction over Defendant pursuant to HRS § 634-35 as Defendant engaged in acts and made decisions in the City and County of Honolulu that resulted in damages and/or injury to Plaintiff.

8.      All conditions prerequisite for the filing of a lawsuit alleging the claims for relief have been satisfied.

## FACTS

9.      Plaintiff, born on February 17, 1976, has extensive experience in the retail industry having 20 years of experience.

10.     Plaintiff was hired by Defendant in June 2013 as the General Manager of Defendant's Store #344 in Aiea, Hawaii.

11.     Defendant's latest act of discrimination towards Plaintiff occurred

2

on September 24, 2019, when she was discharged from her position with Defendant as a General Manager.

12.   Defendant terminated Plaintiff's employment, due to her protected classes and also because she was a whistleblower.

13.   Plaintiff is an older female employee, and she complained to Defendant regarding potential or actual violations of law, including but not limited to potential or actual violations of HRS Chapter 481A (Uniform Deceptive Trade Practice Act) and HRS Chapter 458 regarding Opticians.

14.   Plaintiff was terminated due to her protected classes and she also was retaliated against and terminated for engaging in protected activity, including but not limited to such protected activity protected by HRS § 378-62.

15.   As a Store Manager for LensCrafters Store #344, Plaintiff performed her duties in an exemplary manner.  She neither had any documented performance problems nor informal discussions regarding any work deficiencies.  She was one of the highest performing managers in the Company.  She has always denied the allegations that led to her termination.

16.   In July 2019, Plaintiff was informed by the Employer, specifically Shellli Linder, Area Manager, that she would be coming to Hawaii to conduct store visits, including Plaintiff's store.

17.   Linder was Plaintiff's immediate manager and decisionmaker. Linder often made statements that indicated she favored younger male employees.  Linder referred to Brian Smith, a manager she supervised, as not only her "Right Hand Man" but also her "Work Husband."  Linder also referred

3

to another young manager, Shareef, as her "Son."

18.     During the course of Plaintiff's employment, Linder stripped her of duties without any reasonable explanation, and gave them to younger male employees. Linder would often ridicule Plaintiff regarding her weight.

19.     On or around August 6, 2019, Linder arrived at Store #344 with "Asset Protection," specifically Mark Flores and Jay Andrus, and Dana Nakagawa, Regional Director of Eye Care.

20.     The team interviewed employee Chris Lagapa, and then brought Plaintiff into a room for an interview.

21.     Jay Andrus proceeded to inform Plaintiff that he was instructed to investigate Plaintiff's store in response to a "store manager's complaint about her." He then stated that the complaint was that Plaintiff's store was making unauthorized "insurance edits."

22.     Throughout the meeting and consistently throughout the investigation Plaintiff voluntarily answered all of the questions posed to her to the best of her ability, even though Andrus yelled at her and called her a "liar."

23.     Plaintiff denied any allegation that any "insurance edits" processed at her store were improper or unauthorized. Manual insurance edits were made, not just at Plaintiff's store, but all Hawaii stores, to avoid overcharging the many customers utilizing union benefits with their purchases.

24.     Specifically, these union members were entitled to significant discounts, collectively bargained for by their union and secured through HMSA. However, Plaintiff discovered that members were routinely being

4

overcharged by Defendant's Ciao! Optical point of sale ("POS") system.

25.     One of the glaring, but not only, problem raised on numerous occasions by Plaintiff and her store, up through her termination, was that union members/beneficiaries, as an insurance benefit, were relieved of paying sales tax on their purchases. However, the POS system was never programmed to properly discount the sales tax from the customer's total bill resulting in their overpaying.

26.     The insurer would later reject requests from the customer for reimbursement since Defendant should not have charged the customer sales tax in the first instance.

27.     After her initial complaints, starting around 2016, during the several conference calls held to discuss the issue, Corporate emphasized that while it was working out the problems, the stores must continue to "do what is right for the customer" and perform manual edits based on the updated/supplemental health plan information provided by Corporate.

28.     Defendant falsely claimed the POS system had been corrected as of March 2018. While the POS system was reprogrammed to "auto populate" the union member's insurance information around that time, it was still consistently wrong, despite Defendant's claim.

29.     Even the health plan discount information distributed to the stores by Corporate, by which discounts were performed manually, was often still inaccurate resulting in the customer being overcharged.

30.     Accordingly, during a March 22, 2018, meeting and, afterward by

5

written policy, Jennifer Burmeister at Corporate emphasized that the stores must continue to still "do what is right for the customer" and perform manual edits under circumstances where the POS system did not auto populate correct insurance information.

31.   After March 2018, Plaintiff, having observed that the POS was still inaccurate in "auto populating" customers' insurance benefits information, reported back to Linder and Corporate that customers were still being overcharged.

32.   Subsequently, after March 2018, Plaintiff complained to Corporate and Linder on several occasions that the Company could be liable to many customers who overpaid on their purchases and that cheating them out of insurance benefits was a form of theft or violation of consumer protection laws.

33.   Plaintiff complained that not only was the POS "auto populating" the incorrect insurance benefit information, but the supplemental insurance information circulated by Corporate at the store level as a back-up was also often inaccurate.

34.   Thus, any errors made by Plaintiff or her store were unintentional and were not "fraudulent". Plaintiff neither intentionally overcharged customers and insurers nor undercharged them. Plaintiff never acted in a deliberate manner so that she could benefit monetarily from any transaction at the store level.

35.   Defendant never rolled out an effective "fix" to these POS issues. Processing union members' benefits correctly was still an ongoing problem

6

after March 2018 and through Plaintiff's termination.

36.    The ongoing problems had been discussed with and verified by several managers, including but not limited to Plaintiff, Kristine Moy, former Regional Manager, Shelli Linder, Heather Miram, and "Jen" who was at "ASN Provider Relations," in addition to HMSA managers.

37.    Plaintiff's store serviced most of the customers from the West side of Oahu.  Her store serviced a higher percentage of union members whose purchases and discounts were not properly processed by Defendant's POS system.

38.    Other managers, such as "Maile Piper," "Phillip Rathburn," and "Tina Nygren" had discussions with Plaintiff regarding the POS system and, when Plaintiff started, helped train her to make manual edits to ensure a correct transaction.

39.    Ultimately, Linder decided to terminate only Plaintiff, due to her protected classes in addition to Plaintiff raising potential legal violations for the overcharging and other perceived unlawful conduct by Defendant.

40.    Linder, the decisionmaker, knew about the ongoing problems as reported by Plaintiff, yet did nothing about them.  Both Corporate and Linder were aware that anyone with a "key to the store" was authorized to edit transactions to ensure a customer received the proper discounts.

41.    It was in this context that Plaintiff complained throughout 2019 to Linder and Corporate about the POS system being plagued with problems processing union plan covered purchases and that the result was that

7

customers were routinely being overcharged through no fault of Plaintiff or her employees.

42.    Shortly before her termination Plaintiff also complained that Defendant was violating HRS Chapter 458.

43.    HRS Chapter 458, Section 13, among other things, prohibited "a dispensing optician to permit any unlicensed person to take facial measurements, fit or adjust lenses or frames or duplicate frames unless the unlicensed person is acting under the direct personal supervision of a licensed dispensing optician."

44.    Under the law, "direct personal supervision" means the licensed optician is present on the premises of the optical dispensing establishment and is available for consultation by the unlicensed person assisting the customer.

45.    Plaintiff complained that Defendant did not have a licensed optician at all times on each premises as required by law.

46.    Plaintiff complained directly to Shelli Linder, Regional Manager, in at least May, June and July 2019.

47.    In response Linder and other managers made suggestions that were not solutions, but instead were meant to cover up the legal violation.

48.    One suggestion by both Linder and the Windward store manager, was to have licensed optician Beverly Johnson on premises at Plaintiff's store in Aiea, but to have Johnson charge her time to the Windward store.

49.    In July 2019, when Linder inquired whether the "transfer" was done, Plaintiff made clear that neither she nor Beverly Johnson, whose own

license was at risk, was comfortable with what Linder and the Windward store manager suggested.

50.   Linder was upset that Plaintiff did not agree to go through with the scheme and confirmed with Plaintiff that the Hawaii stores simply did not have a sufficient number of licensed opticians to comply with the law.

51.   The practice of stores not having a licensed optician on premises at all times continued after Plaintiff's termination.

52.   Plaintiff was interviewed during the investigation on August 6, 2019.

53.   On August 16, August 17, and August 28, 2019, Plaintiff filed "Ethics Point" complaints regarding the manner in which the investigation was conducted, that Jay Andrus used and her right to privacy being violated by employees, among other things.

54.   On August 16, 2019, she complained that three days earlier employees were openly discussing and making false statements regarding her and the investigation, and that confidential information was leaked by Chris Lagapa.

55.   On August 17, 2019, Plaintiff initiated another complaint, providing additional information regarding employees and managers openly speaking about the investigation and making false statements about her at Store #344 and #342.

56.   On August 28, 2019, Plaintiff filed another Ethics Point complaint and detailed other problems that had arisen in connection with the

9

investigation, including but not limited to the manner in which she was questioned during her interview, other behavior by Andrus, and the fact that Linder was not responding to her calls and texts regarding the investigation.

57.    On September 10, 2019, Plaintiff reported to Defendant that an employee, Lauren Stevens, verbally threatened her.  No action was taken by Defendant.

58.    On September 24, 2019, Linder met with and informed Plaintiff that she was terminated.  Linder gave Plaintiff the termination letter, which stated Plaintiff "falsified Company records by improperly documenting customer information for transactions"

59.    Linder dismissed what the letter stated and assured Plaintiff that it was not Plaintiff, but Plaintiff's "people [that] were not editing insurance correctly causing the company a loss."

60.    The State of Hawaii Unemployment Division determined that the edits referred to by Defendant were NOT improper.  The State of Hawaii awarded Plaintiff unemployment benefits finding she did NOT engage in misconduct, specifically that Defendant's "reasons for your discharge do not show a willful or deliberate disregard of the employer's interests."

61.    Other employees outside of Plaintiff's protected classes that did not complain about unlawful conduct by Defendant were not treated in the same manner as Plaintiff.

**CLAIMS**

**COUNT I – VIOLATION OF HRS CHAPTER 378 (AGE DISCRIMINATION)**

10

62.     For her Count I against Defendant, Plaintiff re-alleges and incorporates herein all of the foregoing paragraphs of this Complaint.

63.     HRS § 378-2(a)(1)(A) provides in relevant part:

It shall be an unlawful discriminatory practice:

(1) Because of race, sex, sexual orientation, **age**, religion, color, ancestry, disability, marital status, or arrest and court record:

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

HRS § 378-2(a)(1)(A) (emphasis supplied).

64.     Under the Hawaii Employment Practices Act, HRS Chapter 378, covered employers like Defendant are prohibited from discriminating in public and private employment on the basis of "age."

65.     Defendant discriminated against Plaintiff in violation of HRS Chapter 378 during her employment when it terminated her due to age. Plaintiff was 43 years of age when terminated.

66.     Plaintiff was performing satisfactorily when the Company illegally terminated her based on a fabricated excuse.

67.     Similarly-situated employees were not treated in the same manner as Plaintiff and Defendant's explanation for the termination decision was pretext for an illegal motive.

68.     Plaintiff's replacement was a significantly younger employee that did not have 15 years of managerial experience like Plaintiff when hired into the position.

11

69.     As a direct and proximate result of said acts, Plaintiff suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and suffered and continues to suffer physical and psychological pain and suffering, distress, humiliation, great expense, embarrassment, and damage to her reputation.

70.     Defendant's acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore Plaintiff is also entitled to punitive and exemplary damages from Defendant in an amount to be proven at trial.

### COUNT II - VIOLATION OF HRS CHAPTER 378 (GENDER DISCRIMINATION)

71.     For her Count II against Defendant, Plaintiff re-alleges and incorporates herein all of the foregoing paragraphs of this Complaint.

72.     HRS § 378-2(a)(1)(A) provides in relevant part:

It shall be an unlawful discriminatory practice:

(1) Because of race, **sex**, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record[]:

(A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

HRS § 378-2(a)(1)(A) (emphasis supplied).

73.     Under the Hawaii Employment Practices Act, HRS Chapter 378, covered employers like Defendant are prohibited from discriminating in public and private employment on the basis of "sex."

12

74.    As set forth above, during the course of Plaintiff's employment with Defendant, Defendant took adverse action against Plaintiff by terminating Plaintiff's due to gender.  Such action violated the law, HRS Chapter 378.

75.    Similarly-situated employees were not treated in the same manner as Plaintiff and Defendant's explanation for the termination decision was pretext for an illegal motive.

76.    Plaintiff's replacement was a significantly younger male employee that did not have 15 years of managerial experience like Plaintiff when hired into the position.

77.    As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to her damage in an amount to be proven at trial.

78.    Defendant's acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore Plaintiff is also entitled to punitive and exemplary damages from Defendant in an amount to be proven at trial.

### COUNT III – VIOLATION OF HRS § 378-62

79.    Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs of this Complaint.

80.    HRS § 378-62 provides:

§378-62.  Discharge of, threats to, or discrimination against employee for reporting violations of law.  An employer shall not

13

discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1)  The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A)  A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B)  A contract executed by the State, a political subdivision of the State, or the United States[.]

HRS §378-62.

81.     As set forth above, during the course of Plaintiff's employment with Defendant, Plaintiff protested to Defendant violations or suspected violations of law.

82.     Throughout her employment, especially after March 2018, Plaintiff complained to Corporate and Linder on several occasions that Defendant could be liable to many customers who overpaid on their purchases, and that cheating them out of insurance benefits was a form of theft or violation of consumer protection laws.

83.     Plaintiff complained that not only was the POS "auto populating" the incorrect insurance benefit information, but the supplemental insurance information circulated by Corporate at the store level as a back-up was also often inaccurate.  The store would unintentionally process the transaction to the detriment of the customer who might not be reimbursed by the insurer.

84.     Defendant never rolled out an effective "fix" to these POS issues.

14

Processing union members' benefits correctly was still an ongoing problem after March 2018, when Defendant falsely claimed the POS problems were fixed.

85.     Shortly before her termination Plaintiff also complained that Defendant was violating HRS Chapter 458, which specifically requires a licensed dispensing optician to supervise on-site any unlicensed person taking facial measurements, fitting or adjusting lenses or frames or duplicate frames.

86.     Plaintiff reported to Defendant a suspected or actual violation of laws and/or regulations.  She is a whistleblower for which the applicable statute provides full panoply of remedies.

87.     Shortly after making such complaints Defendant engaged in retaliatory acts towards Plaintiff, which eventuated in Plaintiff's termination.

88.     Similarly-situated employees were treated better than Plaintiff.

89.     As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to her damage in an amount to be proven at trial.

90.     Defendant's acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living.

91.     Therefore, Plaintiff is also entitled to punitive and exemplary damages from Defendant in an amount to be proven at trial.

15

## COUNT IV – TERMINATION IN VIOLATION OF PUBLIC POLICY

92.    Plaintiff re-alleges and incorporates by reference paragraphs 1-91 above.

93.    Plaintiff's complaints about violations or suspected violations of law were the proximate cause of her termination.

94.    Further, shortly before her termination Plaintiff made "Ethics Point" complaints regarding the manner in which the investigation was conducted, Andrus's behavior during the investigation, that her right to privacy was being violated by employees, that employees were making false statements about her, and that another employee made a verbal threat against her in connection with the investigation.

95.    Shortly thereafter Linder terminated Plaintiff's employment.

96.    The public policy exception to at-will employment prohibits an employer from discharging an employee if the discharge violates a clear mandate of public policy.

97.    Here, the mandates of public policy includes but is not limited to state laws and regulations designed to protect consumers, to ensure the safe provision of optician services, and the rights of employees being investigated, including the right to privacy, and protection from false statements and threats of violence.

98.    As a proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to her

16

damage in an amount to be proven at trial.

99.     Defendant's acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore Plaintiff is also entitled to punitive and exemplary damages from Defendant in an amount to be proven at trial.

Wherefore, Plaintiff prays this Court grant judgment in his favor over and against Defendant, and award damages to Plaintiff, including special damages, back pay and future loss of earnings, compensatory damages, liquidated damages, attorneys' fees, prejudgment interest, and punitive damages in an amount deemed sufficient to punish Defendant for its actions; costs of this action; and such other and further relief as this Court may deem just and proper.

DATED:  Honolulu, Hawai`i, October 8, 2020.

ROMAN F. AMAGUIN
Attorney for Plaintiff

17

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

HOLLY FINLEY,                          )   CIVIL NO. _____
                                       )   (Other Non Vehicle Tort)
            Plaintiff,                 )
                                       )   **JURY DEMAND**
                                       )
    vs.                                )
                                       )
                                       )
                                       )
LUXOTTICA OF AMERICA INC. dba          )
LENSCRAFTERS,                          )
                                       )
            Defendant.                 )
                                       )
_____)

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Plaintiff demands a jury trial on all issues triable by

a jury

DATED: Honolulu, Hawaii, October 8, 2020

Roman Amaguin
Attorney for Plaintiff

| **STATE OF HAWAI'I**<br>CIRCUIT COURT OF THE<br>FIRST CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF | VS. | DEFENDANT(S) |
|---|---|---|
| Holly Finley | | Luxottica of America, Inc. dba LensCrafters |

**PLAINTIFF'S NAME & ADDRESS, TEL. NO.**

c/o
Roman Amaguin, Esq.
345 Queen Street Suite 504
Honolulu, Hawaii 96813
808 545 4151

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

Roman Amaguin, Esq.
345 Queen Street Suite 504
Honolulu, Hawaii 96813

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the<br>Judiciary's electronic case management<br>system which is accessible via eCourt Kokua<br>at: http:/www.courts.state.hi.us | **Effective Date of 28-Oct-2019**<br>**Signed by: /s/ Patsy Nakamoto**<br>**Clerk, 1st Circuit, State of Hawai'i** |  |
|---|---|---|

 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on OAHU- Phone No. 808-539-4400, TTY 808-539-4853, FAX 539-4402, at least ten (10) working days prior to your hearing or appointment date.